IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROGERS MORGAN, *et al.*, | * | |
| Plaintiffs, | * | |
| v. | * | Civil Action No. 8:19-cv-02797-PX |
| CALIBER HOME LOANS, INC., | * | |
| Defendant. | * | |

\*\*\*\*\*\*

**MEMORANDUM OPINION**

Plaintiffs Rogers Morgan and Patrice Johnson filed a Class Action Complaint against Defendant Caliber Home Loans, Inc., alleging violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA") and implementing regulations known as "Regulation X" codified at 12 C.F.R. §§ 1024.1 to 1024.5. ECF No. 1. Defendant Caliber has moved to dismiss the Complaint in its entirety and strike the class action allegations. ECF No. 10. The motions are fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the reasons below, the Court GRANTS Defendant's motions.

**I.    Background**

Central to this case is whether Defendant Caliber violated RESPA and Regulation X by providing adverse information to credit reporting agencies within sixty days of receiving letters from Plaintiffs Morgan and Johnson regarding their loan obligations. Plaintiffs have brought claims individually and on behalf of two putative classes. The Court first will address the facts pertinent to each of the named Plaintiffs and next as to the putative class allegations.

1

### A. Rogers Morgan

In 1994, Morgan bought his home in Temple Hills, Maryland, financing his purchase with a mortgage for an unspecified amount. ECF No. 1 ¶¶ 16, 28-29. Four years later, Morgan refinanced his mortgage with NationsBank, NA. *Id.* ¶¶ 28-29. Morgan claims that he made all his required payments "and more" and that he submitted his final payment on the mortgage in July 2013. *Id.* ¶¶ 29, 32. Despite Morgan's claims to have fully paid off the loan, Defendant Caliber purchased the loan in 2015 and became its servicer. *Id.* ¶ 32. Caliber thereafter reported to credit agencies that Morgan still owed "various sums of money" on the loan. *Id.* ¶ 33.

Morgan worked at the time for the District of Columbia. *Id.* After Caliber reported the adverse information to the credit agencies, Morgan's employer, who would run credit reports on employees from time to time, expressed concerns that the adverse reporting made Morgan "vulnerable to exploitation" as a public servant. *Id.* As a result, on September 25, 2016, Morgan sent the following letter to Caliber:

> Please find a report from D.C. Gov[ernment] stating as of 10/13/15 I owe Caliber $16,806[.] [A]lso on 9/20/16 I called Caliber and talked to Thomas ID#27662[.] [H]e stated I owe $30,656.89 and the $630.00 on my record is late charges. Can you please correct your records[?] Your office reporting the wrong amount to the credit agency is effecting [sic] my employment. Please correct your records.

ECF No. 10-1 at 2.

Caliber continued to report adverse loan information to the major credit reporting agencies in October and again in November of 2016. ECF No. 1 ¶¶ 37-39. Morgan avers that Caliber's continued reporting of this adverse loan information caused him to suffer "economic and non-economic damages in the form of emotional distress damages." *Id.* ¶ 40.

### B. Patrice Johnson

In 2016, Johnson purchased a home in Waldorf, Maryland, from U.S. Bank Trust N.A. *Id.* ¶¶ 17, 41. Johnson financed the transaction with a purchase money loan from Caliber which was secured with a Deed of Trust. *Id.* ¶ 42. In December 2017, Johnson started to fall behind on her loan payments. *Id.* ¶ 45. On September 12, 2018, she applied to Caliber for a loan modification which Caliber initially approved the following month. *Id.* ¶¶ 45, 47, 50. But then in November 2018, Caliber informed Johnson that it would not finalize her loan modification unless the company that had installed solar panels on the home, and had taken a priority lien against the property, would agree to subordinate its interest to Caliber. *Id.* ¶ 52. Caliber ultimately declined to modify Johnson's loan due to "unresolved title issues." *Id.* ¶¶ 56-57.

In February 2019, Johnson sent to Caliber correspondence challenging its basis for denial. *Id.* ¶ 59; ECF No. 10-2 at 2. Johnson also asked Caliber to correct its error, as well as "suppress any negative credit reporting" for sixty days. *Id.* at 3; ECF No. 1 ¶¶ 63–64. Caliber declined to revisit the loan modification and went on to report the delinquent payments to the credit reporting agencies during the sixty-day period. ECF No. 1 ¶¶ 68-70; ECF No. 10-1 at 4; ECF No. 13-1. Johnson alleges "economic and non-economic damages" as a result of Caliber's continued reporting, including fear that her employment would be negatively affected. ECF No. 1 ¶ 72.

### C. Class Allegations

Plaintiffs Morgan and Johnson also bring the same claims on behalf of a putative class comprised of "all residential loan borrowers" who have submitted a Qualified Written Request ("QWR") to Caliber within the last three years, excluding any borrower who has since obtained a discharge under Chapter 7 of the Bankruptcy Code ("the Caliber Class"). *Id.* ¶ 73. The subclass

are those within the Caliber Class who have a "current borrower-servicer relationship with Caliber in relation to their residential, mortgage loan." *Id.* ¶ 75.  The Complaint avers generally that Caliber's policy and practice is to continue reporting negative credit information even after receiving QWRs and thus in violation of RESPA. *Id.* ¶¶ 5, 7, 102.

## II.     Standard of Review

A motion to dismiss brought pursuant to Rule 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff. *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted).  The Court, however, need not credit conclusory statements or legal conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  A motion to dismiss for failure to state a claim is therefore proper when the complaint does not contain factual allegations that render the plaintiff's claims facially plausible or permit reasonable inference that the defendant is liable for the alleged misconduct. *See Iqbal*, 556 U.S. at 678–79.

When ruling on a motion to dismiss, the Court may consider materials attached to the complaint without transforming the motion to dismiss into one for summary judgment. *See* Fed. R. Civ. P. 10(c).  The Court may also consider materials attached to a motion to dismiss, so long as such materials are integral to the complaint and authentic. *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

4

**III.   Discussion**

RESPA aims to provide consumers with "greater and more timely information" and protect them from "unnecessarily high settlement charges caused by certain abusive practices." 12 U.S.C. § 2601(a).  Against this remedial backdrop, Plaintiffs contend Caliber violated RESPA and Regulation X by furnishing adverse information to credit reporting agencies within sixty days of receiving Plaintiff's respective letters.  Count I, brought on behalf of Plaintiffs individually and the Caliber class, alleges violations of RESPA, 12 U.S.C. § 2605(e)(3), and Regulation X, 12 C.F.R. § 1024.35.  Count II, brought on behalf of Plaintiff Johnson and the Caliber subclass, seeks declaratory relief in light of Caliber's "policy and practice" of depriving borrowers of certain protections afforded under RESPA and Regulation X.  ECF No. 1 ¶¶ 102-03.

**A.  Plaintiffs' Individual RESPA Claims**

Plaintiffs cannot move forward on their RESPA claims unless they plausibly aver that: (1) their correspondence to Caliber constituted a Qualified Written Request ("QWR"); (2) Caliber, after receiving a valid QWR, violated one of its enumerated duties under section 2605 of RESPA; and (3) plaintiffs either suffered actual damages or, due to a "pattern or practice of noncompliance," are entitled to statutory damages.  *See Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018); *see also Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 413 (4th Cir. 2015) (stating loan servicers' duties under RESPA apply only if borrower submits a QWR); *Ayres v. Ocwen Loan Servicing, LLC*, 129 F.Supp.3d 249, 265 (D. Md. 2015).

RESPA defines a QWR as:

> "a written correspondence . . . that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides

>sufficient detail to the servicer regarding other information sought by the borrower."

12 U.S.C. § 2605(e)(1)(B).  Thus, while the correspondence "need not have magic language to constitute a QWR," a valid QWR must either request information "related to the servicing of the plaintiff's loan" or allege an "accounting error with plaintiff's loan." *Barr*, 303 F. Supp. 3d at 418 (citing *Martins v. Wells Fargo Bank, N.A.*, No. CCB-16-1070, 2016 WL 7104813, at *5 (D. Md. Dec. 6, 2016)).  The purpose of this requirement is to apprise the servicer adequately of the deficiencies so that it may take appropriate and timely remedial action.  12 U.S.C. § 2605(e)(1)(B) (a valid QWR enables the servicer to identify the individual account and evaluate the specific accounting error alleged); *cf. Lupo v. JP Morgan Chase Bank, N.A.*, No. DKC 14–0475, 2015 WL 5714641, at *5 (D. Md. Sept. 28, 2015).

Where the QWR relates to "a dispute regarding the borrower's payments," the servicer is prohibited for sixty days after receipt of the QWR from providing adverse credit information on any payment "owed by such borrower relating to such period or qualified written request, to any consumer reporting agency."  12 U.S.C. § 2605(e)(3).  But as § 2605(e)(3) makes clear, not every borrower letter qualifies as a QWR.  For the correspondence to constitute a QWR, it must include "a statement of the reasons" supporting the servicer's errors.  12 U.S.C. § 2605(e)(1)(B); *Poindexter*, 792 F.3d at 413.  The borrower must "specifically identify" the servicing error and provide "sufficient detail" as to why the borrower believes his or her accounting statement is incorrect.  *Barr*, 303 F. Supp. 3d at 419; *see also Willis v. Bank of Am. Corp.*, No. ELH-13-02615, 2014 WL 3829520, at *31 (D. Md. Aug. 1, 2014); *Dickson v. Nationstar Mortg., LLC*, No. 8:18-CV-02499-PX, 2019 WL 1573544, at *2 (D. Md. Apr. 11, 2019); *Jackson v. Caliber Home Loans*, No. 18-CV-4282(NG)(CLP), 2019 WL 3426240, at *6 (E.D.N.Y. July 30, 2019)

6

(dismissing Section 2605(e)(3) claim because "the Letter does not indicate specifically which payments were made by plaintiff and not credited").

Reading the attached correspondence most favorably to Plaintiffs, the Court concludes the letters do not qualify as QWRs. ECF Nos. 10-1 & 10-2. Turning first to Morgan's letter, it suffers from a "lack of specificity." *Sparrow v. Countrywide Fin. Corp.*, No. CV PJM 08-13, 2008 WL 11366508, at *4 (D. Md. July 24, 2008); *see also Barr*, 303 F. Supp. 3d at 419. It asks only that Caliber correct the outstanding loan amount because it is "wrong." ECF No. 10-1 at 2. However, mere conclusory allegations that a loan amount is "incorrect" or "excessive" do not provide any reason to believe the amount is an error, as is required by the statute. *Sparrow*, 2008 WL 11366508, at *3. Because the correspondence is not a QWR, Morgan's RESPA claim necessarily fails.

Similarly, Johnson's letter is also not a valid QWR. *See id*. The correspondence challenges only Caliber's stated denial for the loan modification. But letters related to the denial of loan modification applications are not QWRs because they do not implicate servicing of the loan. *See, e.g.*, *Nash v. PNC Bank, N.A.*, No. CV TDC-16-2910, 2017 WL 1424317, at *5 (D. Md. Apr. 20, 2017); *Bullock v. Ocwen Loan Servicing LLC*, No. CIV. PJM 14-3836, 2015 WL 5008773, at *10 (D. Md. Aug. 20, 2015) (holding that "a request for information about loan modification does not constitute a QWR"); *Davenport v. Wells Fargo Home Mortg.*, No. CIV. PJM 14-2369, 2015 WL 4475467, at *2 (D. Md. July 17, 2015) (same); *Burdett v. Wells Fargo Bank, N.A.*, No. PWG-14-1677, 2015 WL 13611833, at *4 (D. Md. Jan. 20, 2015) ("Thus, to the extent that Plaintiff's . . . letter sought information about loan modification, it was not a QWR."). The correspondence is not a QWR, and so Johnson's claim also fails.

Plaintiffs, in response, urge the Court to apply RESPA broadly to effectuate its remedial purpose. Plaintiffs specifically contend that Regulation X expands the definition of a QWR to encompass "notices of error" ("NOEs"), which include the Morgan and Johnson letters. ECF No. 13 at 6-9. The Court disagrees.

Regulation X does not define a "NOE" in a way that exceeds the statutory definition of a QWR. *See Jones v. Wells Fargo Bank, N.A.*, No. ELH-18-8, 2018 WL 4382916, at *8 (D. Md. Sept. 12, 2018) (citing *Nash v. PNC Bank, N.A.*, No. TDC-16-2910, 2017 WL 1424317, at *6 (D. Md. Apr. 20, 2017)). Rather, it makes clear that an NOE *is* a "*qualified written request* that asserts an error relating to the servicing of a mortgage loan.*"* 12 C.F.R. § 1024.35(a) (emphasis added). The regulation sets forth examples of "covered errors" sufficient to constitute a QWR/NOE, and Plaintiffs' letters fall into none of them. 12 C.F.R. § 1024.35(b).

The Court therefore concludes that neither letter was a valid QWR and that Caliber was not required under RESPA or Regulation X to defer its reporting to credit agencies for sixty days. Accordingly, Plaintiffs' individual claims fail as a matter of law.[1] Further, because the letters, attached in their entirety and made part of the Complaint, do not qualify as QWRs, the legal deficiencies cannot be corrected by amendment of the pleadings. The individual claims will therefore be dismissed with prejudice.[2] *See McLean v. United States*, 566 F.3d 391, 400–01 (4th Cir. 2009) (internal citations omitted).

---

[1] Johnson also seeks declaratory relief pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201. ECF No. 1 ¶ 102. However, because her claims fail on Caliber's statutory liability, so too must the remedial relief of the proposed declaration. *See CGM, LLC v. BellSouth Telecomms., Inc.,* 664 F.3d 46, 55-56 (4th Cir. 2011).

[2] Because the claims fail on this basis alone, the Court declines to address Defendant Caliber's additional arguments that the Complaint fails to allege actual damages or to show that Caliber's "practice or pattern" of violating RESPA warrants statutory damages. ECF No. 10 at 28, 33; *see also Trionfo v. Bank of Am., N.A*., No. JFM-15-925, 2015 WL 5165415, at *4 n.2 (D. Md. Sept. 2, 2015) (declining to rule on pattern and practice claims because the plaintiffs' RESPA claim failed as a matter of law); *Richardson v. Rosenberg & Assocs. LLC*, No. CIV. WDQ-13-0822, 2014 WL 823655, at *8 (D. Md. Feb. 27, 2014) (same).

### B. Class Action Allegations

Defendant Caliber separately moves to strike Plaintiffs' class action allegations. ECF No. 10 at 43. This Court has determined that each liability theory fails as a matter of law with respect to the named Plaintiffs, and the Complaint does not aver any independent theory of class-wide relief separate from the Plaintiffs' as representatives of the putative classes. Accordingly, the class allegations fail for the same reasons the individual claims do. *See* Fed. R. Civ. P. 23(c)(1)(a); *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d 138, 146 (4th Cir. 2001) (citing *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 156 (1982)); *Collins v. Village of Palatine*, 875 F.3d 839, 846 (7th Cir. 2017) ("When the plaintiff's own claim is dismissed, he can no longer be the class representative. At that point, either another class representative must be found or the suit is kaput.") (quoting *Hardy v. City Optical, Inc.*, 39 F.3d 765, 770 (7th Cir. 1994)); *see also Herron v. Mayor and City Council of Annapolis, Md.*, 388 F. Supp. 2d 565, 573 (D. Md. 2005), *aff'd*, 198 Fed. Appx. 301 (4th Cir. 2006); *Pelino v. Ward Mfg., LLC*, No. RDB–14–02771, 2015 WL 4528141, at *4 (D. Md. Jul. 27, 2015).

To the extent Plaintiffs intended to bring class claims based on legal theories apart from those brought by the named Plaintiffs, they have not successfully done so here. *Cf. Rosedale v. CarChex, LLC*, No. SAG-19-2780, 2020 WL 998740, at *4–5 (D. Md. Mar. 2, 2020) (denying without prejudice motion to certify "grossly overbroad" class). Plaintiffs aver generally that Caliber implemented a "policy and practice" of reporting adverse credit events during the sixty-days that followed receipt of a QWR. ECF No. 13 at 31-34. But apart from the Johnson and Morgan correspondence which this Court has determined do not qualify as QWRs, no facts support that Caliber received other qualifying QWRs and thereafter refused to defer reporting for

9

sixty days.³ Put differently, no facts support the claimed Caliber "policy and practice" which would render plausible class-wide liability under RESPA. *See* Fed. R. Civ. P. 23(c)(a)(1).

### IV. Conclusion

For the reasons stated above, the Court GRANTS Defendant's motion to dismiss and motion to strike the class action allegations at ECF No. 13. A separate order follows.

| | |
|---|---|
| 6/10/2020 | /S/ |
| Date | Paula Xinis<br>United States District Judge |

---

³ The Complaint refers to five additional borrowers who supposedly submitted QWRs and Caliber reported adverse credit information within sixty days of receipt. ECF No. 1 ¶ 99. However, the Complaint is devoid of any facts by which this Court can infer that the correspondences qualify as QWRs.