## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROGERS MORGAN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. 8:19-cv-02797-PX |
| CALIBER HOME LOANS, INC., | * | |
| Defendant. | * | |

***

### MEMORANDUM OPINION

Pending before the Court is the motion to strike class allegations filed by Defendant Caliber Home Loans, Inc. ("Caliber"), ECF No. 33, and the cross-motion for class certification filed by Plaintiff Rogers Morgan, ECF No. 34. This matter has been fully briefed, and no hearing is necessary. *See* Loc. R. 105.6. For the following reasons, the motion to strike class allegations is GRANTED and the cross-motion for class certification is DENIED.

### I.      Background

This case concerns alleged violations of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605 ("RESPA"), and "Regulation X," codified at 12 C.F.R. §§ 1024.1 to 1024.5. RESPA requires loan servicers who receive a qualified written request ("QWR") that disputes an issue with the servicing of a borrower's loan payment to cease communicating adverse credit information related to that payment for sixty days. 12 U.S.C § 2605(e)(3). Relevant here, a QWR is defined as a "written correspondence" that enables the servicer to identify the name and account of the borrower, and "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). Regulation X plainly prohibits servicers from reporting, for sixty days, "adverse information to any consumer

reporting agency regarding any payment that is the subject of the notice of error," with a notice of error ("NOE") defined to include a QWR "that asserts an error relating to the servicing of a mortgage loan."  12 CFR §§ 1024.35(a), 1024.35(i)(1).

The Complaint concerns two individual plaintiffs who had sent correspondence to Caliber disputing adverse loan information.  ECF No. 1 ¶ 73.  The first involved Plaintiff Rogers Morgan ("Morgan"), who sent a letter to Caliber regarding what he believed to be erroneous reporting of outstanding debts listed on his credit report.  *Id.* ¶ 34.  For at least two months after receiving this letter, Caliber continued to report adverse credit information to credit reporting agencies.  *Id.* ¶¶ 37–39.  The second involved Patrice Johnson ("Johnson"), who, through written correspondence, broadly challenged the basis for Caliber's denial of her requested loan modification and asked that Caliber cease reporting negative credit information for sixty days.  *Id.* ¶¶ 63–64.  Caliber declined to revisit the loan modification and went on to report delinquent payments to credit reporting agencies during the sixty-day period.  *Id.* ¶¶ 68–70.

From this, both Plaintiffs alleged that their correspondence with Caliber constituted a QWR, and thus Caliber violated RESPA and Regulation X by reporting adverse information to credit agencies for sixty days thereafter.  *Id.* ¶¶ 37–39.  The Complaint also generally asserted that Morgan and Johnson each represented a putative class challenging Caliber's "policy and practice" of continuing to report negative credit information after receiving QWRs.  *Id.* ¶¶ 5, 7, 102.

On October 31, 2019, Caliber moved to dismiss the Complaint, principally arguing that neither the Morgan nor Johnson correspondence qualified as a QWR, and so the individual and class claims must be dismissed.  ECF No. 10 at 31.  Caliber did not independently challenge the sufficiency of the class-wide claims, but rather reserved its right to file a separate motion to

strike class allegations if the individual claims survived challenge. *Id.* The Court granted Caliber's motion to dismiss, concluding that neither the Morgan nor Johnson correspondence qualified as a QWR, and dismissed the individual and class claims. ECF No. 15 at 7–8; ECF No. 16.

On appeal, a divided Fourth Circuit panel affirmed the dismissal of Johnson's claims, agreeing that she had not submitted a QWR because "correspondence limited to the dispute of contractual issues that do not relate to the servicing of the loan, such as loan modification applications, do not qualify as QWRs." ECF No. 21-2 at 12.[1] As to Morgan, however, the majority concluded that his letter provided sufficient detail regarding the alleged payment servicing error to qualify as a QWR. *Id.* at 9–10; *but see id.* at 14–15 (Judge Richardson concurring in part and dissenting in part, concluding that the Morgan letter was insufficiently detailed to constitute a QWR). The Fourth Circuit, in turn, remanded the case for further proceedings consistent with its decision. *Id.* at 13.

Caliber now moves to strike the remaining class allegations related to Morgan's claims. ECF No. 33. Morgan opposes and moves for class certification pursuant to Federal Rule of Civil Procedure 23. ECF No. 34.

## II.    Legal Standard

Rule 23 requires a court, "at an early practicable time," to determine whether to certify an action as a class action. Fed. R. Civ. P. 23(c)(1)(A). If the issues "are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim," a court may certify the class or strike class allegations before discovery begins. *Williams v. Potomac Family Dining Grp. Operating Co., LLC*, No. GJH-19-

---

[1] By implication, the class-wide claims depending on Johnson's cause of action also remain dismissed.

1780, 2019 WL 5309628, at *4 (D. Md. Oct. 21, 2019) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982)); *see also Strange v. Norfolk and W. Ry. Co.*, No. 85-1929, 1987 WL 36160, at *3 (4th Cir. Jan. 12, 1987).  "If class treatment on the face of the complaint leaves little doubt that a class action is not viable," the court should strike the class allegations.  *Richards v. NewRez LLC*, No. ELH-20-1282, 2021 WL 1060286, at *29 (D. Md. Mar. 18, 2021).

The standard of review for a motion to strike class allegations at the pleadings stage is the same as a motion to dismiss for failure to state a claim.  *See Williams*, 2019 WL 5309628, at *5.  The Court accepts "the well-pled allegations of the complaint as true," and construes all facts and reasonable inferences most favorably to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997).  To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).

In a motion to certify a class, "the proponent of class certification has the burden of establishing the right to such certification under Rule 23."  *Ostrof v. State Farm Mut. Auto. Ins. Co.*, 200 F.R.D. 521, 528 (D. Md. 2001) (quoting *Bostron v. Apfel*, 182 F.R.D. 188, 192 n.6 (D. Md. 1998)).  Importantly, "Rule 23 does not set forth a mere pleading standard.  A party seeking class certification must affirmatively demonstrate his compliance with the Rule."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23 contains an "implicit threshold requirement that the members of a proposed class be 'readily identifiable,'" also known as the "ascertainability" requirement.  *EQT Prod. Co. v. Adair*, 764 F.3d 347, 358 (4th Cir. 2014) (quoting *Hammond v. Powell*, 462 F.2d 1053, 1055 (4th

Cir. 1972)).  If Plaintiff makes this showing, he must next demonstrate that the class meets four additional prerequisites: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).  Lastly, under Rule 23(b), Plaintiff must show that the class should be certified for one of the following reasons: (1) separate actions would create a risk of adjudications that would be inconsistent or impede the interests of non-parties; (2) final injunctive or declaratory relief is appropriate; or (3) common questions of law or fact predominate over individual questions.  Fed. R. Civ. P. 23(b).

Because the motion to strike and the motion for class certification turn on whether Morgan has satisfied these Rule 23 requirements, the Court will consider both motions together.

## III.   Analysis

As an initial matter, the Court disposes of Morgan's argument that Caliber is prohibited from filing a motion to strike because Caliber "sought no review of its effort to strike the putative class claims on appeal."  ECF No. 34 at 8.  The Court rejects this argument as meritless. This Court had initially dismissed the entire Complaint, including the class claims, so Caliber had no adverse ruling from which to appeal.  Morgan also misapprehends the Fourth Circuit decision.  Nowhere did the Fourth Circuit "conclusively decide" the viability of the class claims that depend on Morgan as the class representative.  *Id.* at 7.  Rather, the issue on appeal and the Fourth Circuit decision was confined solely to Morgan's individual claims.  Thus, Caliber's motion to strike the class allegations is properly before the Court.

Caliber first argues that the proposed class is not ascertainable.  ECF Nos. 33-1 at 10; 36

at 2.  If "class members are impossible to identify without extensive and individualized fact-finding or 'mini-trials,'" then the class does not meet the ascertainability precondition for class-wide treatment.  *EQT Prod. Co.*, 764 F.3d at 358 (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2005)).  "The goal is not to 'identify every class member at the time of certification,' but to define a class in such a way as to ensure that there will be some 'administratively feasible [way] for the court to determine whether a particular individual is a member' at some point."  *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 658 (4th Cir. 2019) (quoting *EQT Prod. Co.*, 764 F.3d at 358).

The Complaint identifies the class as "all residential loan borrowers for whom Caliber received a QWR/NOE in the three years immediately preceding this Class Action pursuant to 12 U.S.C.A. § 2605 and 12 C.F.R. § 1024.41."  ECF No. 1 ¶ 73.  Caliber presses that this definition requires a fact-intensive inquiry to determine whether each class member's correspondence qualifies as a QWR.  ECF No. 33-1 at 11.  The Court agrees.

As the initial round of motions reflect, whether any particular correspondence qualifies as a QWR rests on the information included within it.  Where Johnson's correspondence failed to meet the definition, Morgan's succeeded.  ECF No. 21-2.  Whether the customer correspondence qualifies as a QWR—namely, whether it concerns a dispute over servicing of loan payments; articulates a "statement of reasons" for the belief that the account is in error; and "enables the servicer to identify" the account—requires individual examination of each correspondence.  12 U.S.C. § 2605(e)(1)(B).  Thus, the Complaint's class definition provides no administratively feasible way to proceed without a fact-intensive inquiry that would defeat the purpose of class certification.

Indeed, Morgan, in response, recognizes as much.  He now seeks to narrow the class

definition to include only those borrowers "for whom Caliber acknowledged in writing [as] having received a QWR/NOE, in a form substantially similar to Exhibit 2" appended to his cross-motion for class certification.  ECF No. 34 at 14.  Exhibit 2 is a letter from Caliber to Morgan that states, "[i]n accordance with Section 6 of the Real Estate Settlement Procedures Act (RESPA), this letter has been sent to acknowledge receipt of your correspondence by Caliber…." ECF No. 34-2.  According to Morgan, for those borrowers who received this letter, Caliber has already made the "key individualized factual determinations" of whether the borrower had submitted a QWR.  ECF No. 37 at 3.  Morgan further argues that because RESPA requires Caliber to acknowledge in writing receipt of a QWR, *see* 12 U.S.C. § 2605(e)(1)(A), the class may be easily ascertained as to all borrowers who received such correspondence.  ECF No. 37 at 3.

Viewing the letter at Exhibit 2 most favorably to Morgan, it does not make the putative class any more identifiable.  Caliber's letter merely states that it is sent "in accordance with Section 6" of RESPA, 12 U.S.C. § 2605; but nowhere does the letter intimate that it responds only to those who submitted a QWR.  Nor does the reference to § 2605 shed any light on the purpose of the correspondence.  Although § 2605(e)(1)(A) requires lenders to acknowledge receipt of QWRs, § 2605 also requires lenders to respond to other informational requests from borrowers.  *See* 12 U.S.C. § 2605(k)(1)(D) (requiring a response within 10 business days to a request from a borrower for contact information about the owner or assignee of a loan).  Given the generic nature of the correspondence, it alone does not make the class ascertainable.

Alternatively, even assuming that the correspondence is sent only to those who submitted a QWR, ascertainability problems remain.  Regulation X contemplates two different types of QWRs: "[a] qualified written request that asserts an error," 12 C.F.R. § 1024.35(a), and "[a]

qualified written request that requests information," 12 C.F.R. § 1024.36(a).  The relevant QWR here is only that which relates to "a dispute regarding the borrower's payments."  12 U.S.C. § 2605(e)(3).  But because QWRs may also include requests "for information relating to the servicing of [a] loan," 12 U.S.C. § 2605(e)(1)(A), generic correspondence sent to any borrower who submits a QWR does not help to define the class.  And nothing else in the correspondence itself suggests that it is sent only to those whose QWRs asserted an error related to a loan payment, thus triggering the sixty-day bar on reporting adverse credit information.  12 C.F.R. § 1024.35(i)(1).  To define the class as all customers who received the Caliber letter would thus "sweep[] within it persons who could not have been injured by the defendant's conduct," rendering the class definition too broad for class-wide treatment.  *Kohen v. Pac. Inv. Mgmt. Co. LLC*, 571 F.3d 672, 677 (7th Cir. 2009).[2]

Caliber next argues that even if Morgan could demonstrate ascertainability, the putative class fails to meet the Rule 23(a) requirements of commonality and typicality, as well as the predominance standard in Rule 23(b).  ECF No. 33-1 at 9, 14; ECF No. 36 at 10–11, 13.  Courts in this circuit often analyze the commonality and typicality factors together.  *See Stott v. Haworth*, 916 F.2d 134, 143 (4th Cir. 1990); *Ross-Randolph v. Allstate Ins. Co.*, DKC 99-3344, 2001 WL 36042162, at *5 (D. Md. May 11, 2001).  If a Court must make "specific, individual inquiries as to each of the class plaintiffs regarding the critical issues, then there is no

---

[2] Caliber also argues that the class is an "unascertainable fail-safe class."  ECF No. 36 at 3.  However, a fail-safe class is defined as "one that requires a finding of liability before ascertaining whether an individual is a class member."  *Chado v. Nat'l Auto Inspections, LLC*, No. JKB-17-2945, 2019 WL 1981042, at *4 (D. Md. May 3, 2019).  Here, determining whether someone is a class member does not require a finding of liability.  The class could be defined as all borrowers who sent a qualifying QWR that triggered the sixty-day reporting hiatus; but this definition does not establish that Caliber is liable for violating that sixty-day hiatus.  The difficulty for Morgan is that he has not demonstrated how the putative class could be ascertained absent a fact-specific inquiry.  For the same reasons, the Court cannot see how certification on the sole question of liability pursuant to Fed. R. Civ. P. 23(c)(4), as Morgan urges, cures this problem precisely because of the fact-intensive steps necessary to identify which borrowers submitted QWRs.

commonality and typicality." *Ross-Randolph*, 2001 WL 36042162, at *5.  Moreover, "[i]n a

class action brought under Rule 23(b)(3), the 'commonality' requirement of Rule 23(a)(2) is

'subsumed under, or superseded by, the more stringent Rule 23(b)(3) requirement that questions

common to the class predominate over' other questions." *Lienhart v. Dryvit Sys., Inc.*, 255 F.3d

138, 146 n. 4 (4th Cir. 2001) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 609

(1997)).  In short, class treatment requires that "[t]he common questions [] be dispositive and

over-shadow other issues." *Lienhart*, 255 F.3d at 146.

Morgan's class allegations fail to demonstrate the predominance of one legal question

supporting class-wide treatment.  Morgan asserts that the unifying class question is whether

Caliber maintained a practice and "policy" of continued reporting of adverse and disputed credit

information after receiving a QWR contesting the debt.  ECF No. 34 at 16, 19.  But this alone

would not "drive the resolution of the litigation" as to the class.  *EQT Prod. Co.*, 764 F.3d at 360

(quoting *Dukes*, 564 U.S. at 350).  The Court would still need to "conduct an individualized

analysis" to determine whether Caliber continued reporting information about a payment that

was disputed in a QWR.  *Bond v. Marriott Intern., Inc.*, 296 F.R.D. 403, 408 (D. Md. 2014).

This added "layer of transaction-specific inquiry—examining the content of the credit report and

comparing it with the qualified written request"—would dominate the litigation.  *Ploog v.

Homeside Lending, Inc.*, No. 00 C 6391, 2001 WL 987889, at *15 (N.D. Ill. Aug. 28, 2001),

*report and recommendation adopted* No. 00 C 6391, 2001 WL 1155288, at *1 (N.D. Ill. Sept.

28, 2001); *cf. Robinson v. Nationstar Mortg. LLC*, No. TDC-14-3667, 2019 WL 4261696, at *19

(D. Md. Sept. 6, 2019) (concluding, in analyzing a different RESPA provision, that "a central

computerized analysis…would substantially, if not completely, resolve questions of whether

RESPA violations occurred").  Because "individual factual determinations will constitute a

significant part of this action" as to RESPA liability, *Ross-Randolph*, 2001 WL 36042162, at *9,

Morgan has failed to demonstrate that a predominant legal question favors class-wide treatment.

Thus, Caliber's motion must be granted, and Morgan's motion must be denied.

## IV.    Conclusion

Based on the foregoing, the Court will grant Caliber's motion to strike the class

allegations and deny Morgan's motion to certify the class.  The class claims are dismissed, albeit

without prejudice so that Morgan may seek leave to amend the Complaint to cure the

deficiencies of the class claims, if possible.  *See Williams*, 2019 WL 5309628, at *8; *Richards*,

2021 WL 1060286, at *30.  A separate Order follows.


11/16/2022                                       /S/                         
Date                                                                Paula Xinis
United States District Judge