IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROGERS MORGAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 8:19-cv-02797-PX |
| | * | |
| CALIBER HOME LOANS, INC., | * | |
| | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

Pending before the Court in this mortgage servicing dispute are Plaintiff Rogers Morgan's motion for partial summary judgment and Defendant Caliber Home Loan, Inc's ("Caliber") cross motion for summary judgment. ECF Nos. 53, 55. The issues are fully briefed, and no hearing is necessary to resolve the motions. *See* D. Md. Loc. R. 105.6. For the following reasons, Morgan's motion for partial summary judgment is granted, and Caliber's cross motion for summary judgment is granted in part and denied in part.[1]

**I.    Background**

Except where otherwise noted, the following facts are undisputed. Morgan purchased his home on July 20, 1994. On June 25, 1998, Morgan borrowed $126,286.70 to refinance his home mortgage loan (the "Mortgage") from Nations Bank, NA, which later merged with Bank of America, NA ("Bank of America"). ECF No. 53-2 at 3, 6–9. The Mortgage term was 15 years

---

[1] Caliber also moves the Court to seal exhibits at ECF Nos. 57 & 61 (corrected exhibits). ECF No. 56. Morgan has not responded to the motion. The public retains a presumptive right to access judicial records. *See Rushford v. New Yorker Magazine*, 846 F.2d 249, 253 (4th Cir. 1988). Accordingly, the movant bears the burden of demonstrating that sealing such record furthers a "significant interest that outweighs that presumption." *Id.* After reviewing the proposed sealed documents, the only information that must be shielded from the public is personal identifying information, *see* Loc. R. 207.2, which Caliber has already redacted. *See* ECF Nos. 57 & 61. The motion to seal is therefore denied. As to ECF Nos. 54 & 59, Morgan filed these documents under seal without an accompanying motion. The Clerk is directed to unseal ECF Nos. 54, 57, 59 & 61.

and was due to mature in 2013.  *Id.*  Morgan modified the Mortgage once to change the date of his monthly mortgage payment.  *Id.* at 3, 10–11.

In November 2014, after the Mortgage had matured, the loan servicing was transferred from Bank of America to Caliber.  ECF No. 53-2 at 47.  At the time of transfer, the loan documents showed an outstanding balance due on the Mortgage.  *Id.* at 40; ECF No. 60-1 at 25.  Morgan repeatedly contacted Caliber about this purported outstanding loan balance.  *See, e.g.*, ECF No. 60-1 at 25, 77–79.  Sometime in 2015, Morgan learned through his employer-generated credit check that Morgan's credit reflected a $16,806 Mortgage arrearage.  ECF No. 60-2 at 6–14; ECF No. 60-1 at 13.  Morgan's employer informed him that he must correct the adverse credit reports or opportunities for job promotions would be lost to him.  ECF No. 60-1 at 15–16.

Over the next year, Morgan continued receiving notices regarding the outstanding Mortgage balance.  *See, e.g.*, ECF No. 53-2 at 45.  On September 20, 2016, Morgan called Caliber to inquire about these notices because he believed the Mortgage had been paid off.  ECF No. 60-1 at 26.  Morgan learned during that call that the Mortgage balance had increased to $30,656.89.  *Id.*

On September 25, 2016, Morgan sent Caliber a letter which stated: "I called Caliber and talked to [employee] . . . he stated I owe $30,656.89 . . . . Can you please correct your records. Your office's reporting this wrong amount to this credit agency is effecting [sic] my employment. Please correct your records."  ECF No. 60-2 at 16; ECF No. 60-1 at 26.  Caliber received the letter on October 3, 2016, and responded in writing to Morgan the next day.  ECF No. 53-2 at 28–29, 60.  In its October 4, 2016 letter, Caliber acknowledged receipt of the letter pursuant to the Real Estate Settlement Procedures Act ("RESPA") and stated that it would "perform the necessary research and respond within the time period required by law."  ECF No.

53-2 at 60.

Two days later, Caliber determined that, in its view, the previously reported mortgage balance was incorrect.  ECF No. 53-2 at 30–31, 66; *see* ECF No. 61 at 9–10; ECF No. 54 at 5–9.  Caliber re-calculated the balance as $8,823, not $30,656.89.  ECF No. 54 at 4–9.  That same day, Caliber reported the new balance information to the credit reporting agencies using an automated universal data form ("AUD").  *Id.* at 10.  Caliber also suspended its monthly report to the credit reporting agencies regarding the Mortgage from October 6, 2016 through March 2017.  ECF No. 53-2 at 31–32; ECF No. 61 at 9–10; ECF No. 60-2 at 20–21, 49–53.

On October 11, 2016, Caliber separately informed Morgan in writing that the credit bureau report was "inaccurately reporting the amount past due."  ECF No. 54 at 3.  The letter vaguely referred to Caliber having corrected the inaccuracy, but Caliber did not explain what was inaccurate and how that error was corrected.  *Id.*  Nor did Caliber share with Morgan that, in Caliber's view, he still owed $8,823 on the Mortgage.  *See id.*  The letter did say that it may take up to four weeks before the "correct information" would appear in his credit report, and that Morgan could contact Caliber with any questions via the telephone number or email provided.  *Id.* at 3–4.

Morgan continued to dispute that he owed any money on the Mortgage and sent letters to the credit reporting agencies saying as much.  ECF No. 60-2 at 77–78.  According to Morgan and his family, the notice from his employer as to his poor credit and the dispute regarding an outstanding balance on the Mortgage caused him emotional distress.  ECF No. 60-1 at 25; ECF No. 58-1 at 3–11.

On September 23, 2019, Morgan sued Caliber for violating RESPA, 12 U.S.C. § 2605, and its related regulations.  ECF No. 1.  On June 10, 2020, the Court dismissed Morgan's claim,

holding that his September 25, 2016, letter did not meet the RESPA requirements as a Qualified Written Request ("QWR"), a necessary element of the claim.  ECF Nos. 15 & 16.  Morgan appealed, and the Fourth Circuit reversed, finding that Morgan did in fact submit a QWR to Caliber.  *Morgan v. Caliber Home Loans, Inc.*, 26 F.4th 643, 650 (4th Cir. 2022).  Thereafter, Caliber answered the allegations and discovery ensued.

On June 2, 2023, Morgan moved for partial summary judgment as to liability only, ECF No. 53, and on June 23, 2023, Caliber filed a cross motion for summary judgment as to liability and damages.  ECF No. 55.  For the following reasons, Morgan's motion is granted as to two of the three elements of the RESPA claim, and Caliber's motion is granted as to the unavailability of statutory damages.

**II.     Standard of Review**

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)).  "A mere scintilla of proof . . . will not suffice to prevent summary judgment."  *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'"  *Campbell v.*

4

*Hewitt, Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)).  Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted.  *Celotex*, 477 U.S. at 322.  "Where, as here, cross motions for summary judgment are filed, a court must 'evaluate each party's motion on its own merits, taking care [in each instance] to draw all reasonable inferences against the party whose motion is under consideration.'"  *Snyder ex rel. Snyder v. Montgomery Cnty. Pub. Sch.*, No. DKC 2008-1757, 2009 WL 3246579, at *5 (D. Md. Sept. 29, 2009) (quoting *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

**III.    Analysis**

Both parties seek summary judgment in their favor for Morgan's RESPA claim under 12 U.S.C. § 2605(e)(3).  Morgan contends that the undisputed material evidence shows Caliber violated section 2605(e)(3) when it sent the AUD mere days after receiving Morgan's QWR.  ECF No. 53 at 6–7, 11–12.  Caliber argues that its reporting was required and even if it were not, Morgan's failure to prove damages destroys the claim.  ECF No. 55-1 at 20–28, 28–37.

Section 2605(e)(3) specifies that "[d]uring the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, *a servicer may not provide information regarding any overdue payment*, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency. . . ."  12 U.S.C. § 2605(e)(3) (emphasis added).  Accordingly, a servicer violates this provision if (1) after receiving a QWR (2) the servicer reports an overdue

payment during the 60-day quiet period, and (3) such reporting causes actual damages. *See Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 417 (D. Md. 2018). The Court considers each element separately.

First, as a matter of law, Morgan's September 25, 2016, letter constitutes a valid QWR. *See Morgan*, 26 F.4th at 650 ("We conclude that the Morgan Letter is a QWR subject to RESPA, as it is 'a written correspondence' that articulates a 'statement of reasons' in 'sufficient detail' to indicate to [Caliber] why Morgan believed the credit reporting was in error") (quoting § 2605(e)(1)(B) and *Pointdexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 413 (4th Cir. 2015)). Thus, Morgan is entitled to summary judgment on the first element.

Second, the parties do not dispute that within three days of receiving the QWR, Caliber submitted an AUD informing the credit reporting agencies that Morgan owed $8,823 in outstanding loan amounts. *See* ECF No. 55-1 at 14; ECF No. 53 at 13. Nor do the parties meaningfully dispute that this qualifies as reporting an "overdue payment." *See, e.g.*, ECF No. 55-1 at 21–22; ECF No. 53 at 13. Thus, on the facts, Caliber indisputably failed to refrain from reporting "*any overdue* payment" for sixty days after having received a QWR. *See id.*; § 2605(e)(3).

On this element, Caliber fronts a number of ultimately unpersuasive legal arguments. First, it contends that it could not have violated RESPA by submitting the AUD because a different provision of RESPA, section 2605(e)(2), requires such notification of "corrected" information. ECF No. 55-1 at 20–21; *see* § 2605(e)(2). Caliber misreads section 2605(e)(2). This provision requires that within 30 days of receiving a QWR, a servicer shall first "make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction . . . ." §

2605(e)(2)(A). The provision also requires that after reasonable investigation, the servicer must "provide the borrower with a written explanation or clarification that includes," where applicable, "a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer" and appropriate servicer contact information. § 2605(e)(2)(B). The provision, however, imposes no reporting requirements to the credit reporting agencies. *See* § 2605(e)(2). Thus, Caliber cannot take shelter under section 2605(e)(2).

Caliber next argues that the Federal Credit Reporting Act ("FCRA"), 15 U.S.C § 1681, *et seq.* also requires that it report the information in the AUD, and so Caliber should be relieved of the RESPA 60-day withholding requirement. *See* ECF No. 55-1 at 26. Caliber points specifically to 15 U.S.C. §1681s-2(a)(2) which states,

**(2) Duty to correct and update information**

A person who—

(A) regularly and in the ordinary course of business furnishes information to one or more consumer reporting agencies about the person's transactions or experiences with any consumer; and
(B) has furnished to a consumer reporting agency information that the person determines is not complete or accurate, shall promptly notify the consumer reporting agency of that determination and provide to the agency any corrections to that information, or any additional information, that is necessary to make the information provided by the person to the agency complete and accurate, and shall not thereafter furnish to the agency any of the information that remains not complete or accurate.

15 U.S.C. §1681s-2(a)(2).

This provision broadly requires a furnisher to supply correct and complete information. *See id.* Caliber contends that this provision alone required it to report an ongoing outstanding balance or "potentially [face] an FCRA lawsuit." ECF No. 55-1 at 27. But this contention is wrong, at least as to Morgan, because no private right of action lies in a section 1681s-2(a)(2)

violation. *See* § 1681s-2(a)(2); ECF No. 62 at 13 (later admitting that the FCRA provision does not provide a private right of action).

Moreover, Caliber studiously avoids the entirety of section 1681s-2(a), particularly those provisions which suggest that Caliber owes no reporting duty when the information is "negative" or adverse to the consumer. Of particular relevance here, subsection 1681s-2(a)(7) governs the provision of "negative information," which is defined as "information concerning a customer's delinquencies, late payments, insolvency, or any form of default." § 1681s-2(a)(7)(G)(i). That provision makes clear that "[*i*]*f* any financial institution . . . furnishes information to a consumer reporting agency" it "shall provide notice of such furnishing of negative information in writing to the customer." *Id.* at (a)(7)(A)(i) (emphasis added). And still other portions of the section 1681s-2(a)(7) suggest that the furnisher is *not* required to provide "negative information about the customer to a consumer reporting agency" once it provides notice as required under section 1681s-2(a)(7)(A)(i). *Id.* at (a)(7)(E). Given that an "overdue payment" as defined in section 2605(e)(3) of RESPA seems to fall within the ambit of "negative information" under the FCRA, the Court is not persuaded the statute prohibits Caliber from complying with RESPA. Accordingly, because no genuine dispute exists that Caliber reported an ongoing overdue Mortgage balance of $8,823 within the 60-day quiet period required under subsection 2605(e)(3), summary judgment on this element is granted in Morgan's favor.[2]

---

[2] Morgan alternatively argues that Caliber violated section 2605(k)(1)(E) and its implementing regulation 12 C.F.R. § 1024.35(e)(1)(i)(B). ECF No. 53 at 11. The regulation requires that once a servicer has been notified of an error, the servicer must either "correct[] the error or errors identified by the borrower and provid[e] the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance;" or "[c]onduct[] a reasonable investigation and provid[e] the borrower with a written notification that includes a statement that the servicer has determined that no error occurred. . . ." § 1024.35(e)(1)(i)(A) & (B). Morgan argues that Caliber violated section 1024.35(e)(1)(i)(B) because it failed to perform a "reasonable investigation." ECF No. 54-3. But this requirement applies only where the servicer determines "no error has occurred," and Caliber *did* identify an error. That said, a legitimate argument can be made that Caliber's October 11, 2016 letter does not meet the "notification" requirements described in subsection (A). *See* § 1024.35(e)(1)(i)(A). The letter does not describe the error, how it was corrected, or the "effective date of the

As to the third element, Caliber contends that summary judgment should be granted in its favor because Morgan has not suffered any legally cognizable damages. ECF No. 55-1 at 28–37. The damages available under RESPA are broad, allowing for "*any* actual damages to the borrower as a result" of the defendant's non-compliance with RESPA. § 2605(f)(1) (emphasis added); *see, e.g.*, *Frazile v. EMC Mortg. Corp.*, 382 Fed. App'x 833, 836 (11th Cir. 2010); *Fox. v. Statebridge Co., LLC*, 629 F. Supp. 3d 300, 310 (D. Md. 2022). However, whatever the damage pursued, the plaintiff must "demonstrate that the statutory violation was a proximate cause of the injury sustained." *Ayres v. Ocwen Loan Servicing, LLC*, 129 F. Supp. 3d. 249, 276 (D. Md. 2015) (citation omitted).

Morgan initially sought economic and non-economic damages, ECF No. 58-1 at 72, but has since narrowed his requested relief to emotional distress damages. ECF No. 58 at 16–18. He has also adduced sufficient evidence from which a reasonable juror could conclude that he suffered emotional distress stemming from Caliber's AUD sent to the credit reporting agencies. *Olds v. United States*, 473 F. App'x 183, 185 (4th Cir. 2012) ("Only when the facts are all admitted and only one inference may be drawn from them will the court declare whether an act was the proximate cause of an injury or not." (quoting *Adams v. Mills*, 322 S.E.2d 164, 172 (1984)).

Around the time of Caliber's AUD, the mother of Morgan's children observed that Morgan was "worried and anxious," which was "unlike Morgan." *See* ECF No. 58-1 at 3–4. When she asked what was troubling him, Morgan would "almost always turn to Caliber." *Id.* at 4 (Affidavit of Jaqueline Ellerbe). Similarly, Morgan's daughter recalls that while living with Morgan during this time, he was "anxious about Caliber hurting his financial status"; Morgan

---

correction." *See id.*; ECF No. 54 at 3. Thus, should Morgan wish to pursue a violation of this subsection at trial, he may.

regularly "paced around," was "short tempered," and could not eat. *Id.* at 9–10 (Affidavit of daughter Tierra Morgan). Morgan also sought medical assistance for his anxiety and depression. *See* ECF No. 61 at 31. On this record, a juror could reasonably conclude that he suffered emotional distress connected with Caliber's failure to refrain from reporting adverse outstanding payments in the AUD. *See Olds*, 473 App'x at 185. Thus, this element will be left to the trier of fact whether Caliber's section 2605(e)(3) violation was the proximate cause of Morgan's emotional distress.

In response, Caliber argues that Morgan cannot uncouple his asserted damages arising from the RESPA violation from the emotional injury he sustained from receiving an adverse credit report from his employer or notices from Bank of America. ECF No. 55-1 at 34–36; *see, e.g.*, ECF No. 60-1 at 81–99; ECF No. 60-2 at 6–14. But this fact-bound retort is precisely the kind of argument reserved for the jury. *See Olds*, 473 App'x at 185. Accordingly, summary judgment in Caliber's favor as to actual damages is denied.

Morgan also seeks statutory damages which are triggered when the servicer engages in "a pattern or practice of noncompliance with the requirements of this section." § 2605(f)(1); *see Kapsis v. Am. Home Mortg. Servicing Inc.*, 923 F. Supp. 2d 430, 445 (E.D.N.Y. 2013). According to Morgan, Caliber's single AUD constitutes a pattern and practice because Caliber forwarded it three credit reporting agencies and violated multiple RESPA provisions. ECF No. 58 at 20; *see* ECF No. 58-3 at 17. But the fact remains that Caliber submitted *one* AUD on *one* occasion. If this alone were sufficient to establish a pattern and practice, then the "pattern and practice" requirement sufficient to trigger enhanced damages would apply in almost every case. *Cf. Kapsis*, 923 F. Supp. 2d at 445 (finding plaintiff plead a "pattern or practice" when he alleged numerous, separate violations of § 2605 as it related to his loan); *see also Galante v. Ocwen*

*Loan Servicing LLC*, No. ELH-13-1939, 2014 WL 3616354, at *34 (D. Md. July 18, 2014) (collecting cases). Because the record construed most favorably to Morgan cannot support a pattern or practice finding, Morgan will not be permitted to pursue statutory damages on this claim.

**IV.   Conclusion**

In sum, no genuine issue of disputed fact exists as to whether Morgan's September 25, 2016 letter constitutes a QWR or whether Caliber violated section 2605(e)(3) by reporting an overdue mortgage payment during the 60-day quiet period. The Court grants summary judgment in Morgan's favor on these elements. As to actual damages, Caliber's motion for summary judgment in its favor must be denied because sufficient evidence exists from which a reasonable factfinder could conclude that Morgan's emotional distress arose from Caliber's section 2605(e)(3) violation. However, as to statutory damages, Caliber's motion is granted.

A separate order follows.

<u>February 22, 2024</u>  
Date

/s/  
Paula Xinis  
United States District Judge